IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN D. C.,[1]                        )
                                      )
          Plaintiff,                  )
                                      )
vs.                                   )   Civil No. 17-cv-1116-CJP[2]
                                      )
COMMISSIONER OF SOCIAL                )
SECURITY,                             )
                                      )
          Defendant.                  )

## **MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for benefits in October 2013, alleging disability beginning on the date of the application. After holding an evidentiary hearing, ALJ Thomas Auble denied the application on October 20, 2016. (Tr. 19-29). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 21.

1

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1.   Whether the ALJ erred in failing to identify and reconcile apparent conflicts between the VE's testimony and the *Dictionary of Occupational Titles* (DOT).

2.   Whether the ALJ erred in failing to rely on evidence of (and make a finding regarding) whether significant numbers of jobs are available either in Plaintiff's region or in several regions of the country.

## Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at

3

step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). However, while

judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Auble followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had the severe impairment of recurrent major depression with psychosis and anxiety. He further determined that this impairment does not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at all exertional levels with the following mental limitations:

> [H]e is limited to simple and routine tasks. He requires low stress work and a low stress job defined as having only occasional decision-making and only occasional changes in work setting. He cannot perform work with a production quota, meaning he cannot have a strict production standard or rigid production pace such as with an automated line that a worker cannot control. He can only occasionally interact with coworkers, and supervisors. The claimant's interaction with the public must be brief and superficial.

The ALJ found that plaintiff had no past relevant work. Based on the testimony of a vocational expert, the ALJ found that plaintiff was not disabled because he was able to do other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of plaintiff's arguments, the Court will omit a discussion of the medical evidence.

Plaintiff was represented by an attorney at the evidentiary hearing in August 2016. (Tr. 37).

Plaintiff testified regarding his symptoms, medical treatment, and daily activities. (Tr. 43-71).

A vocational expert (VE) also testified. The ALJ asked a hypothetical question which corresponded to the RFC assessment. The VE identified three jobs that could be done by a person with plaintiff's RFC: cleaner (DOT 381.687-018), kitchen helper (DOT 318.578-010), and laundry worker (DOT 361.367-018). (Tr. 71-72).

The ALJ asked the VE whether her testimony had been consistent with the DOT. She answered:

> Yes, except for my testimony regarding absenteeism and off task. It's outside the scope of the DOT and based upon my experience doing job analysis and placement in many positions in this category – on so many performance issues related to these two areas which usually results in their termination of employment.

(Tr. 73).

Plaintiff's counsel asked no questions of the VE and did not object to her testimony. (Tr. 73).

## **Analysis**

Plaintiff's first argument is that the ALJ failed to sufficiently identify and reconcile conflicts between the VE's testimony and the DOT.

Plaintiff argues that the VE's testimony conflicted with information in the DOT because the hypothetical question included mental limitations that are not addressed by the DOT.

6

As was noted above, at step five of the sequential analysis, if the claimant is not able to perform his past work, the Commissioner bears the burden of showing that he is capable of performing other jobs that exist in significant numbers in the economy.

In making the step five determination, the ALJ generally relies on the DOT for information about the typical characteristics of jobs as they exist in the economy.[4] An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. See, 20 C.F.R. § 404.1566(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

For each job title, the DOT specifies whether certain physical and mental activities are required, and, if so, the frequency with which they are required. The DOT does not, of course, speak to every possible aspect of the job title. Defendant agrees that the DOT is silent on the mental limitations contained in the RFC. Doc.17, p. 4.

When a VE testifies, the ALJ is required to ask the VE whether there are any conflicts between her testimony and the information in the DOT; if so, the ALJ must

---

[4] The agency is developing a replacement for the DOT, referred to as the "Occupational Information System." This system will be the "primary source of occupational information SSA staff use in our disability adjudication process." This system is projected to be implemented in 2020. https://www.ssa.gov/disabilityresearch/occupational_info_systems.html, visited on November 16, 2018.

resolve those conflicts. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). The ALJ did ask the VE about conflicts here.

Plaintiff argues that there was a conflict because the VE testified about limitations that are not addressed in the DOT. Plaintiff's counsel did not point out any conflict between the VE's testimony and the DOT at the evidentiary hearing.[5] Therefore, in this Court, plaintiff "now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008), citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)[emphasis in original].

Defendant argues that there is no conflict here at all because the VE testified about subjects not addressed in the DOT. Doc. 17, p. 4. She cites a number of cases from district courts in this circuit in support of her position. See, Doc. 17, pp. 4-5. This Court finds the reasoning of those cases persuasive. Further, since the filing of the briefs in this case, the Seventh Circuit issued its decision in *Collins v. Berryhill*, ___ F. App'x ___, 2018 WL 3783601 (7th Cir. Aug. 9, 2018), reh'g denied (Sept. 24, 2018), also agreeing with defendant's argument. Although *Collins* is nonprecedential, its reasoning is persuasive. The Seventh Circuit found that there was a conflict where the VE testified about a topic addressed in the DOT (exertional level), but there was not a conflict where the DOT was silent (sit/stand option). *Collins*, 2018 WL 3783601, at *3-4. See also, *Zblewski v. Astrue*, 302 F.

---

[5] Plaintiff is represented by a different attorney in this Court.

App'x 488 (7th Cir. 2008).

For his second point, plaintiff argues the ALJ's decision was erroneous because the VE only identified job-numbers on a national level and not per region. According to 20 C.F.R. § 404.1512(b)(3), the Commissioner is responsible for providing "evidence about the existence of work in the national economy that [a claimant] can do . . . ." "Work in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 243(d)(2)(A). The purpose of this provision is to prevent the Social Security Administration from denying benefits based on "isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where the applicant lives." *Barrett v. Barnhart*, 368 F.3d 691, 692 (7th Cir. 2004)(internal quotations and citations omitted). However, if work exists in several regions, it does not matter whether work exists in the immediate area where a claimant lives. If a significant number of jobs that can be performed by the claimant exists in either the local, regional, or national economy, "the claimant loses." *Browning v. Colvin*, 766 F.3d 702, 708 (7th Cir. 2014)

Plaintiff does not argue the jobs the VE identified exist only in isolation or in concentrated regions. Any such argument would be frivolous. The jobs identified by the VE (cleaner, kitchen helper, and laundry worker) are not regional. Moreover, plaintiff did not dispute the VE's testimony regarding the job-numbers at the hearing and an ALJ may rely on even "purely conclusional" VE testimony that goes unchallenged. *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir.), on reh'g, 368 F.3d 691 (7th Cir. 2004).

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED:   November 16, 2018.**


                                        **s/ Clifford J. Proud**
                                        **CLIFFORD J. PROUD**
                                        **U.S. MAGISTRATE JUDGE**